THOMAS P. KELLY III (TK-9401)
KELLY LAW OFFICES, LLC
3000 ATRIUM WAY - SUITE 291
MOUNT LAUREL, NEW JERSEY 08054
Attorneys for Plaintiff

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| THOMAS P. KELLY Jr., | : | |
| | : | |
| Plaintiff | : | Civil Action No. 2:09-cv-02478 |
| | : | (DRD-MAS) |
| v. | : | |
| | : | **FIRST AMENDED COMPLAINT** |
| RELIANCE STANDARD | : | |
| LIFE INSURANCE COMPANY, | : | JURY TRIAL DEMANDED |
| | : | |
| and, | : | ELECTRONICALLY FILED |
| | : | |
| THE PENN MUTUAL | : | |
| LIFE INSURANCE COMPANY, | : | |
| | : | |
| Defendants | : | |

_____

Plaintiff, Thomas P. Kelly, Jr., by way of this First Amended Complaint against the
above-named Defendants, says:

## PARTIES

1.      Plaintiff Thomas P. Kelly Jr. ("Kelly" or "Plaintiff") is an individual whose
primary residence is 516 Spencer Lane, Warminster, Bucks County, Pennsylvania.

2.      Defendant Reliance Standard Life Insurance Company ("Reliance") is a
corporation that routinely conducts business in New Jersey and that maintains its principal place
of business at 2001 Market Street, Suite 1500, Philadelphia, Pennsylvania.

3.      Defendant Penn Mutual Life Insurance Company ("Penn Mutual") is a mutual company that routinely conducts business in New Jersey and that maintains its principal place of business at 600 Dresher Road, Horsham, Montgomery County, Pennsylvania.

## JURISDICTION

4.      This Court has jurisdiction over this action, pursuant to 29 U.S.C. §1132, because Plaintiff raises claims under the Employee Retirement Income Security Act, 29 U.S.C. §1001, et seq. ("ERISA").

5.      Plaintiff's claims include a demand for the recovery of benefits from an employee welfare benefit plan; a demand for enforcement of his rights under the terms of the plan; and for clarification of his rights to future benefits under the terms of the plan, pursuant to 29 U.S.C. §1132(a)(1)(b).

6.      Section 502(e)(1) of ERISA, 29 U.S.C. §1132(e)(1) provides that this Court shall have original jurisdiction over actions brought by a participant to recover the benefits due them under the terms of an employee welfare benefit plan.

7.      This Court also has jurisdiction over this action, pursuant to 18 U.S.C. 1964, because Plaintiff raises claims under the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. 1961 et seq. ("RICO").

8.      This Court has also jurisdiction over this action, pursuant to 29 U.S.C. §2617(a)(2), because Plaintiff raises claims under the Family Medical Leave Act of 1993,  29 U.S.C. §2601 et seq. ("FMLA").

9.      Venue is proper in this District, because the events that gave rise to this cause of action took place in this District, and because each of the Defendants is located in and/or transacts business in this District.

## FACTS

10.     At all relevant times, Plaintiff was employed by Defendant Penn Mutual as a "Managing Director/Advanced Planning/Compliance Officer" of the company's Edison, New Jersey agency.

11.     The specific duties associated with Plaintiff's occupation are maintained in his personnel file at Penn Mutual's headquarters in Philadelphia, Pennsylvania.  [A copy of Plaintiff's occupation description is included herewith as Exhibit "A".]

12.     The duties associated with Plaintiff's occupation plainly required him to be capable of non-sedentary activities in the performance of his employment obligations.

13.     As a supervising principal of the Edison agency, Plaintiff was required to, *inter alia*: conduct branch reviews at locations designated by the Regional Vice President; to conduct on-site reviews at producer locations designated by the Regional Vice President; and to conduct "private office visit checklists" at several remote branch locations.

14.     Because the Edison, New Jersey agency of Penn Mutual is comprised of individuals who work from several remote locations such as Pulaski, New York; Linwood, New Jersey; Moorestown, New Jersey; Eatontown, New Jersey; and, Ardmore, Pennsylvania, Plaintiff's employment required frequent travel to those locations and, consequently, extensive time spent in transit.

15.     Per the company policy of Penn Mutual at the time, every producer of the Edison agency who did not conduct business from an NASD registered branch office was to be visited by Plaintiff.

16.     Additional duties were also routinely and regularly delegated to Plaintiff by his superiors at Penn Mutual.

17.     The requirement that Plaintiff personally visit each office and each individual associated with the Edison agency in the regular performance of his occupational duties was repeatedly reinforced through written memoranda from Plaintiff's superiors at Penn Mutual.

18.     Additionally, in his multiple function position with Penn Mutual, Plaintiff was required to, *inter alia*: overview all internal and external personnel audits by conducting personal office visits, including remote offices; and to supervise completion of regulatory requirements for all agency associates, including associates who worked from remote locations.

19.     While operating his automobile in the State of New Jersey, Plaintiff was injured in an accident involving a commercial truck on Monday November 7, 2005.

20.     The November 7th crash exacerbated a severe back and spinal injury that Plaintiff had sustained while snowmobiling in 1993.

21.     Plaintiff attempted, but was unable to, return to work on Thursday November 10, 2005, due to the injuries that he sustained in the November 7th vehicle accident.

22.     Plaintiff sought medical treatment from board-certified orthopedic surgeon Dr. Walter Dearolf on November 14, 2005.

23.     Plaintiff's physician met with Plaintiff, conducted a medical examination, took x-rays, performed other tests, and subsequently diagnosed Plaintiff with lumbar radiculopathy, a herniated lumbar disc, and degenerative joint disease of the lumbar spine.

24.     Plaintiff's physician prescribed treatment that included steroid injections and physical therapy, and instructed Plaintiff not to perform any work of any kind.

25.     Plaintiff complied with his physician's instructions and timely notified Penn Mutual of his injuries.

26.     On or about December 2, 2005, Plaintiff received correspondence from Gerry Russell of Penn Mutual's human resources department, enclosing several forms that were purportedly required by Defendant Reliance to document the nature and extent of Plaintiff's injuries well in advance of any potential claim for long-term disability benefits.  [A copy of the letter from G. Russell to T. Kelly, dated December 2, 2005 is attached hereto as Exhibit "B"]

27.     Plaintiff promptly completed and returned the forms, thereby placing both defendants on notice as to the nature and extent of his injuries.

28.     In accordance with the Family Medical Leave Act of 1993 ("FMLA"), Plaintiff was entitled to receive a total of twelve (12) workweeks of leave, because his injuries rendered him unable to perform the functions of his position.

29.     Plaintiff provided Penn Mutual with a sufficient physician's certification, stating that Plaintiff was unable to perform the functions of his position, in accordance with the FMLA.

30.     Penn Mutual did not require that Plaintiff obtain the opinion of a second health care provider regarding any of the certified information.

31.     Penn Mutual granted Plaintiff a Leave of Absence, pursuant to the FMLA. According to Penn Mutual's records, Plaintiff's leave was to extend through at least and including February 24, 2006.

32.     Under the FMLA, Plaintiff was entitled, upon return from such leave, to be restored by Penn Mutual to the position of employment that he held when the leave commenced; or alternatively, to be restored to an equivalent position with equivalent employment benefits, pay, and other terms and conditions of employment.

33.     However, beginning in or around February 2006, and continuing until at least 2007, Defendant Penn Mutual engaged in a related pattern of unlawful conduct that violated the provisions of the FMLA.

34.     For example, on February 21, 2006, prior to the expiration of Plaintiff's leave of absence, Penn Mutual Vice President William D. Gruccio notified Plaintiff in writing that the company would refuse to restore Plaintiff to the position of employment that he held at the commencement of his medical leave.   [A copy of the letter from W. Gruccio to T. Kelly, dated February 21, 2006, is included herewith as Exhibit "C"]

35.     Alternatively, to comply with the FMLA, Penn Mutual was obligated to offer to restore Plaintiff to an equivalent position with equivalent employment benefits, pay, and other terms and conditions of employment.

36.     However, in violation of the FMLA, Defendant Penn Mutual willfully refused to do so.

37.     Instead, during the months that followed, Mr. Gruccio and others at Penn Mutual intentionally engaged in a pattern of related conduct that made equivalent employment opportunities unavailable to Plaintiff.

38.     For example, Defendant Penn Mutual terminated, or allowed to be terminated, a series of Plaintiff's broker-dealer sponsorship registrations, and/or contracts, and/or professional licenses and agreements.

39.     Penn Mutual knew that these registrations, contracts, and licenses were necessary for Plaintiff to perform the duties of his employment as it existed at the time his leave commenced, and that they were equally necessary for Plaintiff to perform the duties of the comparable employment that Penn Mutual was required to offer him under the FMLA.

40.     Nevertheless, beginning in February 2006 and continuing through at least 2007, Defendant Penn Mutual willfully violated the FMLA by: (a) refusing to restore Plaintiff to the position of employment that he held when the leave commenced; (b) by refusing to offer to restore Plaintiff to an equivalent alternative position; and (c) by engaging in a related pattern of unlawful conduct that interfered with Plaintiff's eligibility to be restored to an equivalent position.

41.     Defendant Penn Mutual benefitted financially from its unlawful refusal to comply with the FMLA because, *inter alia*, by doing so Penn Mutual avoided its obligation to make contributions to Plaintiff's pension, 401(k) retirement plan, and various group benefit plans to which Plaintiff was entitled.

42.     Defendant Penn Mutual additionally benefitted financially by violating the FMLA because Plaintiff was precluded from rightfully "vesting" in some or all of these programs, as he otherwise would.

43.     Defendant Penn Mutual additionally benefitted from its violations of the FMLA because, in his position as Managing Director/Advanced Planning/Compliance Officer, Plaintiff had become aware of several potential significant violations of state and federal insurance and securities laws for which Defendant Penn Mutual could be found liable.  Penn Mutual was aware of these potential violations.  By intentionally terminating Plaintiff's employment and by refusing to offer him alternative employment, Penn Mutual also purposefully terminated Plaintiff's compliance investigations, thereby avoiding potential resulting remediation and/or penalties.

44.     Medical evaluations of Plaintiff's injuries were conducted by his physician at six-to-eight week intervals after the initial diagnosis.  Subsequent to each evaluation, Plaintiff was instructed by his physician not to perform any work of any kind.

45.     From approximately November 2005 until approximately March 2006, Plaintiff received a reduced income through a Penn Mutual salary continuation plan.

46.     Additionally, Plaintiff is a beneficiary under a group long-term disability ("LTD") insurance policy, underwritten and issued Defendant Reliance, and sponsored by Defendant Penn Mutual, in conformity with an employee welfare benefit plan provided for the employees of Penn Mutual ("the Plan").

47.     Defendant Reliance is a fiduciary under the Plan, with discretionary authority to interpret the Plan and to determine a claimant's eligibility for benefits under the Plan.

48.     Defendant Penn Mutual is a co-fiduciary under the Plan, within the meaning of 29 U.S.C. §1002(21)(A)(i), because it shares responsibility for managing the Plan's claim process.

49.     Accordingly, Penn Mutual Vice President William Gruccio's February 21st letter instructed Plaintiff to notify him if he intended to submit a claim for LTD benefits under the Plan.

50.     Plaintiff was totally disabled, as that term is defined in the policy.  [A copy of a group long-term disability policy issued by Reliance is attached herewith as Exhibit "D"]

51.     Under the Plan, Plaintiff was entitled to immediately begin receiving a monthly benefit of 66-2/3% of his Covered Monthly Earnings after 180 consecutive days of total disability (also called the "Elimination Period") until he reaches 66 years of age.

52.     In accordance with Mr. Gruccio's instructions, Plaintiff timely notified Penn Mutual of his intent to apply for LTD benefits and requested the necessary application materials.

53.    On or about March 8, 2006, Plaintiff received correspondence from Gerry Russell of Penn Mutual's claims department that was substantially similar to her December 28, 2005 letter.  In her March correspondence, Russell enclosed various claim forms for LTD benefits under the Plan.  [A copy of the letter from G. Russell to T. Kelly dated March 8, 2006 is included herewith as Exhibit "E"]

54.    An employee cannot obtain benefits under the Plan without the involvement of both of the fiduciary co-defendants.

55.    Ms. Russelll's letter confirmed Penn Mutual's role as a fiduciary under the Plan, with responsibility for management and control over the Plan's application process, stating, "Once you receive the completed Attending Physician Report from your doctor, return both report forms to my attention in the enclosed self-addressed envelope.  The forms will then be forwarded to Reliance Standard Life Insurance Company."

56.    Plaintiff returned the completed application materials as instructed, including medical certifications and proof of his disability, to Penn Mutual on or about May 24, 2006.  Plaintiff was eligible for, and entitled to, immediately begin receiving LTD benefits at that time.

57.    Both defendants have a common financial interest in the denial of an employee's claim for benefits under the Plan and both defendants benefit financially whenever a claim for benefits is denied.  For example:

    a.    Defendant Penn Mutual has a financial interest in the denial of its employees' claims for long-term disability benefits under the Plan.  This is true because whenever Defendant Reliance determines that an employee is eligible for benefits, Defendant Penn Mutual is obligated to continue providing group life insurance coverage for that employee at the company's expense.  However, if

Defendant Reliance denies an employee's claim for benefits, then Defendant Penn Mutual is relieved of this obligation.

  1. Specifically, Ms. Russell's March 8, 2006 correspondence stated, "You are currently insured for $287,500 under the group life insurance plan.  This amount will remain in effect during the length of your total disability.  If you are not determined to be totally disabled [by Defendant Reliance], all group life coverage will cease as of your date of termination."

b. Defendant Penn Mutual has an additional financial interest in the denial of its employees' claims for long-term disability benefits under the Plan.  This is true because if Defendant Reliance determines that an employee is eligible for benefits, then Defendant Penn Mutual is obligated to continue providing retirement benefits in the form of what is known as "RSP contributions". However, if Defendant Reliance denies an employee's claim for benefits, then Defendant Penn Mutual is relieved of this obligation.

  1. Specifically, Ms. Russell's March 8, 2006 correspondence stated, "…you may be eligible for RSP core contributions in the future if you are determined [by Defendant Reliance] to be totally disabled. This would be based on your rate of compensation prior to becoming disabled.  We will notify you once a disability determination has been made."

c. Defendant Penn Mutual has an additional financial interest in the denial of its employees' claims for long-term disability benefits under the Plan.  This is true

because if Defendant Reliance determines that an employee is eligible for benefits, then Defendant Penn Mutual is obligated to continue providing contributions to its Employee Pension Plan for that employee.  However, if Defendant Reliance denies an employee's claim for benefits, then Defendant Penn Mutual is relieved of this obligation.

d.  Defendant Penn Mutual has an additional financial interest in the denial of its employees' claims for long-term disability benefits under the Plan.  This is true because while an employee is receiving long-term disability benefits under the Plan, he or she continues to accrue years of service with the company toward "vesting" in certain retirement benefits.  However, if Defendant Reliance denies an employee's claim for benefits, then the employee ceases to accrue years of service and Defendant Penn Mutual is thereby relieved of several related financial obligations.

e.  Defendant Penn Mutual has an additional financial interest in the denial of its employees' claims for long-term disability benefits under the Plan.  This is true because, upon information and belief, the premium paid to Defendant Reliance by Defendant Penn Mutual is affected by the amount paid by Defendant Reliance to Plan beneficiaries in the form of long-term disability benefits.

f.  Likewise, Defendant Reliance has a financial interest in the denial of claims for long-term disability benefits under the Plan.  This is true because whenever the same entity that determines whether a claimant is disabled must also pay for disability benefits, that entity has a financial incentive to find him or her not disabled.

58.     The two defendants, sharing a common structural conflict of interest in the denial of Plaintiff's claim for LTD benefits under the Plan, intended to and did commit many related fraudulent acts as a single enterprise, in furtherance of a common scheme to defraud Plaintiff of benefits to which he was entitled.

59.     Both defendants made use of the mails and/or interstate wires with the intent of furthering their common scheme to defraud and injure Plaintiff.

60.     Plaintiff was injured in his business and property as a result of the defendants' common scheme to defraud him.

61.     Defendant Penn Mutual had a fiduciary obligation to forward the entirety of Plaintiff's claim for benefits to Defendant Reliance, in addition to copies of true and accurate supporting documentation, in a timely manner.

62.     Notwithstanding that obligation, Penn Mutual did intentionally provide Reliance with a fraudulent, incomplete, and misleading copy of Plaintiff's occupational title through use of the mail and/or interstate wires.

63.     Specifically, in Section "A" of Plaintiff's application for disability benefits, captioned "Employer's Statement – To Be Completed By Employer", Gerry Russell, Penn Mutual's Human Resources Recruiting Partner, falsely certified to Defendant Reliance that Plaintiff was employed by Penn Mutual as a "Managing General Agent".  [A copy of Plaintiff's Application is included herewith as Exhibit "F"]

64.     Additionally, in Section "D" of the Employer's Statement, Ms. Russell falsely certified that Plaintiff was alternatively employed by Penn Mutual as the "Agency Manager".

65.     Additionally, in Section "A", Box 10 of the Application, in a section to be completed by the applicant, someone other than Plaintiff inserted the words "Agency Manager"

where an occupational title had been omitted at the time the application was submitted to Penn Mutual.

66.    Each of Ms. Russell's certified statements is untrue because Plaintiff was not employed as an "Agency Manager" or a "Managing General Agent" by Penn Mutual.  As stated, *supra*, Plaintiff was employed by Penn Mutual as a "Managing Director/Advanced Underwriting/Compliance Officer".

67.    Plaintiff correctly listed his occupation as "Managing Director" and also "Agency Managing Director" in response to multiple questions found in Section Four of the Application (i.e., Employment History, Box Three & Employment History, Box Ten).

68.    Penn Mutual provided the incorrect information with the intent that Plaintiff's claim for LTD benefits would be denied, as part of a common enterprise with Defendant Reliance, and in furtherance of the defendants' common scheme to defraud Plaintiff.

69.    The distinction between the information falsely certified by Ms. Russell and Plaintiff's *actual* occupation is a material one because, according to Page C1.2 of its Claims Department Administrative Procedures Manual, Reliance always reviews the Employer Statement as the first step in determining whether an applicant is eligible to receive long-term disability benefits.  [A copy of the Claims Department Administrative Procedures Manual is included herewith as Exhibit "G"]

70.    On or about June 9, 2006, Defendant Reliance notified Plaintiff that it had received Plaintiff's application for LTD benefits and that it had begun processing Plaintiff's claim.  [A copy of the letter from T. Barber to T. Kelly, dated June 9, 2006 is included herewith as Exhibit "H".]

71.     According to the policy, Reliance was obligated to immediately begin payment of benefits to Plaintiff upon the company's receipt of Plaintiff's proof of total disability, and in no event later than June 9, 2006, the date it acknowledged receipt of Plaintiff's claim materials.

72.     Despite Reliance's representation that it started processing Plaintiff's claim on June 9, 2006, the company intentionally refused to process the claim, and instead subsequently notified Plaintiff that review of his application did not actually begin until July 18, 2006, two months after Plaintiff was entitled to begin receiving LTD benefits.  [A copy of the July 18, 2006 letter from Reliance Standard to T. Kelly, dated July 18, 2006 is included herewith as Exhibit "I"]

73.     Notwithstanding Reliance's receipt of Plaintiff's completed application materials on or before June 9, 2006, the company also waited until at least July 18, 2006 to demand supplemental materials from: Plaintiff's physician; Plaintiff's physical therapist; and Plaintiff's employer, capriciously threatening to deny Plaintiff's claim if any of those parties were not immediately responsive to the demand.

74.     The intentionally delayed processing of Plaintiff's application constituted a constructive denial of his claim and was therefore a material breach of the Plan, and a violation of ERISA.

75.     To hasten the review of his already-delayed claim for benefits, Plaintiff personally forwarded the materials requested from these third parties on or about July 25, 2009, and requested, but did not receive, an explanation for the unconscionable delay in the processing of his claim.  Additionally, Plaintiff requested a copy of the Plan.

76.     Unbeknownst to Plaintiff, Defendant Penn Mutual had been immediately responsive to Reliance's demand for additional information and had responded within one day,

on July 19, 2006 by facsimile sent to Terri Barber (Reliance) from Gerri Russell (Penn Mutual). [A copy of the facsimile from G. Russell to T. Barber, dated July 19, 2006 is included herewith as Exhibit "J"]

77.     In her faxed response, Ms. Russell once again provided Defendant Reliance with multiple incorrect and fraudulent statements regarding the nature of Plaintiff's employment with Penn Mutual.

78.     For example, Ms. Russell represented to Ms. Barber that:

    a.    "Attached is a copy of job duties that falls under the job held by Mr. Kelly.  The duties fall under the title of Managing Director which is the general title for all Agency Office Managers such as Mr. Kelly."

79.     That statement is patently false and misleading.  As Penn Mutual's Human Resources Recruiting Partner, Ms. Russell was well-aware that Plaintiff's employment was not generic in nature and that it could not accurately be described as an "Agency Office Manager". The two occupations are entirely dissimilar and involve equally disparate duties.

80.     Additionally, Ms. Russell enclosed a misleading copy of a document entitled "Managing Director's Contract".  However, as Ms. Russell was fully aware, Plaintiff was not employed under that contract.

81.     Notwithstanding her previous misstatements regarding Plaintiff's employment, her production of an incorrect contract and her misleading narrative, Russell's correspondence did place Defendant Reliance on notice that Plaintiff's occupational title was "Managing Director" and not "Agency Manager" or "Managing General Agent", as Ms. Russell had previously certified.

82.     Plaintiff's physician timely responded to the July 18, 2006 request for information from Ms. Barber via facsimile sent on August 10, 2006.

83.     Notwithstanding the timeliness of these third-party responses, Reliance made every effort to unlawfully deny Plaintiff's claim on grounds of non-responsiveness, and unreasonably threatened to do so.

84.     For example, in response to Reliance's July 18, 2006 request for information, Plaintiff's physical therapist immediately provided all requested records so that Plaintiff's claim could be promptly administered.

85.     On July 20, 2006, just two days after Ms. Barber made her request, Cornerstone Physical Therapy Associates faxed a response that included more than twenty-eight pages of Plaintiff's medical records to Defendant Reliance.  [A copy of the cover page from the July 20, 2006 fax from Cornerstone to Reliance is included herewith as Exhibit "K"]

86.     Reliance ignored the timely response from Plaintiff's physical therapist with the intent that his claim would be further delayed and/or denied as a result of the delay.  Instead, Ms. Barber waited until August 17, 2006 before writing another letter to the physical therapist, in which she incorrectly stated:

      a.   "We have made previous attempts to obtain the information requested.  However, our attempts to obtain this information have been unsuccessful…In awaiting the receipt of the information requested, we have exceeded 30 days.  Therefore, if this information is not received within 15 days of the date that appears at the top of this letter, we will have no alternative but to terminate or deny benefits."  [A copy of the letter from T. Barber to Cornerstone Physical Therapy, dated August 17, 2006 is herewith as Exhibit "L"]

87.    Ironically, despite the good faith and very timely response provided by Cornerstone Physical Therapy Associates on July 20th, and notwithstanding Reliance's righteous ignorance of that response, Reliance would have been estopped from taking action adverse to Plaintiff in any event.  This is true because Reliance's request for information literally asked for the impossible.

88.    Specifically, in her carelessly prepared July 18, 2006 information request, Ms. Barber expressly demanded records for "the period of 11-7-06 to present".  [A copy of the letter from Terri Barber to Cornerstone Physical Therapy, dated July 18, 2006 is included herewith as Exhibit "M"]

89.    However, as a judicially noticeable fact, November occurs after July each calendar year.  Therefore, the records requested could not have existed at the time Ms. Barber wrote her letter.

90.    However, instead of discharging her own duties with the requisite care, skill, prudence and diligence necessary under the circumstances, Barber was so eager to deny Plaintiff's claim on behalf of Reliance that she recklessly violated the fiduciary duties owed Plaintiff under the Plan by: (a) issuing a demand for information that could not exist; (b) refusing to acknowledge and process the timely response to that demand notwithstanding her own obvious lack of diligence; and (c) subsequently threatening to deny Plaintiff's application on the erroneous basis of unresponsiveness.

91.    Despite the indisputable facts set forth herein, specifically:

    a.    That Plaintiff was employed by Penn Mutual as a "Managing Director / Advanced Underwriting / Compliance Officer";

    b.    That Plaintiff is totally disabled as that term is defined by the Plan;

c.      That Plaintiff submitted claim forms for benefits under the Plan to Defendant Penn Mutual on a timely basis in May 2006;

d.      That Defendant Penn Mutual forwarded a copy of Plaintiff's application, albeit a fraudulent and misleading one, to Defendant Reliance on or about late May or early June of 2006;

e.      That Defendant Reliance acknowledged receipt of these materials on or about June 9, 2006;

f.      That Defendant Reliance was obligated to begin payment of LTD benefits to Plaintiff immediately upon receipt of Plaintiff's proof of disability (i.e., June 9, 2006);

g.      That Defendant Reliance delayed the processing of Plaintiff's claim until at least July 18, 2006, when it issued requests for additional information to third-parties;

h.      That Defendant Reliance immediately received the requested information from all third-parties;

i.      That Defendant Reliance received duplicate copies of all requested information from Plaintiff on or about July 25, 2006;

j.      That Defendant Reliance committed myriad significant record-keeping errors that delayed the processing of Plaintiff's application; and

k.      That Defendant Reliance had every piece of information necessary for the processing of Plaintiff's application for disability benefits by, at the latest, August 10, 2006,

Defendant Reliance intentionally refused to process Plaintiff's claim, or communicate the reason for the delay in processing his claim, until it denied the claim in a letter dated October 23, 2006, (but not postmarked until November 8, 2006, and received by Plaintiff on November 22, 2006).  [A copy of the letter from T. Barber to T. Kelly, dated October 23, 2006 is included herewith as Exhibit "N"]

92.     The delay of seven months between Plaintiff's submission of his LTD claim to Defendant Penn Mutual (May 2006) and the denial of that claim by Defendant Reliance (November 2006) was a breach of the fiduciary duties of both Defendants, constituted a clear act of bad faith, constituted a material breach of the Plan, was a violation of ERISA, and was intentionally caused in furtherance of the defendants' common scheme to defraud Plaintiff.

93.     The basis for Reliance's denial of Plaintiff's claim was the company's mistaken position that, despite the company's awareness of Plaintiff's true occupational title, and despite Plaintiff's severe injuries, he was capable of performing the material duties of an insurance agency manager.

94.     However, Reliance's denial was wholly improper and fraudulent because, *inter alia*, Reliance knew that Plaintiff was not an insurance agency manager.

95.     Reliance's basis for the denial of Plaintiff's claim was irrevocably established in Ms. Barber's October 23, 2006 correspondence.  In her letter, Ms. Barber stated:

"Totally Disabled" and "Total Disability" mean, that as a result of an Injury or Sickness:

a.     During the Elimination Period and for the first 24 months for which a Monthly Benefits payable [sic], an insured cannot perform the material duties of his/her regular occupation;

(a) "Partially Disabled" and "Partial Disability" mean that as a result of an Injury or Sickness an Insured is capable of performing the material duties of his/her regular occupation on a part-time basis or some of the material duties on a full-time basis. An Insured who is Partially Disabled will be considered Totally Disabled, except during the Elimination Period;

(b) "Residual Disability" means being Partially Disabled during the Elimination Period. Residual Disability will be considered Total Disability.

96.     Curiously, Ms. Barber's October 23, 2006 letter also contained a list of criteria that were not included in the Plan, but that were purportedly used by Reliance in determining whether Plaintiff was capable of performing the duties of his "regular occupation", stating:

"Please be aware that your own regular occupation is not your job with a specific employer, it is not your job in a particular work environment, nor is it your specialty in a particular occupational field. In evaluating your eligibility for benefits, we must evaluate your inability to perform your own regular occupation as it is performed in a typical work setting for any employer in the general economy."

97.     Barber did not identify what she understood Plaintiff's regular occupation to be. Instead, Reliance simply denied Plaintiff's claim based on the company's incorrect determination that he retained the ability to perform the sedentary duties of some unspecified job, despite the fact that his regular occupation requires a higher-than-sedentary level of physical aptitude.

98.     Ms. Barber's October 23, 2006 denial letter cited no basis for Reliance's interpretation of the term "regular occupation", or why the company believed that the duties associated with Plaintiff's occupation of "Managing Director / Advanced Underwriting / Compliance Officer" could be accurately characterized as "sedentary".

99.     As a matter of law, Reliance's statements regarding the term "regular occupation" were fraudulent because those statements were materially false, were known by Reliance to be false at the time they were made, have been specifically proscribed by this Court, and were made with the intent that Plaintiff would rely on such characterization to his detriment, and it was reasonable for Plaintiff to do so.

100.    Specifically, the basis for denial stated in Ms. Barber's letter was fraudulent when the letter was written because Reliance's characterization of the term "regular occupation" was rejected by this Court in a decision that was unequivocally upheld on appeal to the Third Circuit.

101.    The Third Circuit and also this Honorable Court, have repeatedly admonished Reliance that its interpretation of the term "regular occupation", as used in the denial of Plaintiff's claim, is incorrect and unreasonable and that it violates ERISA.

102.    Specifically, in 2003, Reliance attempted to deny another claim for benefits by applying identical language as that found in Ms. Barber's October 23, 2006 letter.  In Lasser v. Reliance Standard Life Insurance Company, 344 F.3d 381 (2004), this Court and also the Third Circuit Court of Appeals held that Reliance had violated ERISA, stating:

     a.   "[W]e believe that "regular occupation" is not ambiguous. The Policy states that it protects the insured from inability to "perform the material duties of his/her regular occupation."  Both the purpose of disability insurance and the modifier "his/her" before "regular occupation" make clear that "regular occupation" is the

usual work that the insured is actually performing immediately before the onset of disability." Id. 386-387.

103.     The Court additionally held:

a.   "[I]t is unreasonable for Reliance to define "regular occupation" differently from its plain meaning or even the somewhat more relaxed understanding of [citations omitted] without explicitly including that different definition in the Policy." Id.

104.     As a party to Lasser, Reliance was aware of the Third Circuit's holding, and was similarly aware that its denial of Plaintiff's claim premised upon the reasons stated in Ms. Barber's letter ran afoul of that holding and was therefore proscribed as a matter of law.

105.     Reliance intended for Plaintiff to rely on its fraudulent misrepresentations regarding the term "regular occupation", and it was reasonable for Plaintiff to do so.

106.     Indeed, as a practical matter, Plaintiff was obligated to rely on Reliance's reasoning in determining whether, and on what basis, to file a subsequent appeal regarding the denial of his claim.

107.     This is not the first occasion where Reliance has intentionally disregarded the Court's holding in Lasser for the purpose of unlawfully denying an applicant's claim for benefits.

108.     Upon information and belief, despite this Court's holding in Lasser, because Reliance does not fear an imposition of punitive damages even for intentional violations of ERISA, the company has established a practice in New Jersey and elsewhere by which it continues to employ the same fraudulent characterization of the term "regular occupation" as a basis for the denial of otherwise legitimate claims.

109.     Reliance's misrepresentation regarding the meaning of "regular occupation" as a basis for the denial of Plaintiff's claim, with the intent of furthering the defendants' common scheme to defraud Plaintiff, was communicated to Plaintiff by mail and/or interstate wire, in violation of 18 U.S.C. §1341.

110.     By applying a fraudulent foundation upon which to deny Plaintiff's claim, Reliance caused Plaintiff to be injured because it willfully precluded him from obtaining a full and fair review of his application, in an intentional and particularly egregious violation of ERISA.

111.     In addition to the conduct described, *supra*, Reliance additionally defrauded Plaintiff by knowingly and intentionally applying an incorrect occupational title during its review of Plaintiff's claim.

112.     In furtherance of their common scheme to defraud Plaintiff, both defendants did, with a common intent and purpose, incorporate an incorrect and misleading job description with Plaintiff's application for LTD benefits.

113.     A true and accurate job description outlining the duties associated with Plaintiff's employment was maintained at Penn Mutual's headquarters and Penn Mutual was obligated to provide that document to Reliance upon Plaintiff's application for benefits.

114.     The correct job description describes the terms of Plaintiff's employment as, *inter alia*, requiring frequent travel to remote locations, time spent in transit, office visits throughout the region, and other non-sedentary duties.

115.     Penn Mutual intentionally withheld the correct job description from Defendant Reliance.  Instead, through use of the mail and/or interstate wires, Penn Mutual intentionally forwarded to Reliance a misleading and incomplete job description that did not accurately

describe Plaintiff's duties.  Penn Mutual committed such fraud with the intent that Plaintiff's claim would be denied, in furtherance of the defendants' common scheme to defraud Plaintiff, in violation of 18 U.S.C. §1341.

116.    Upon information and belief, Defendant Reliance knew that the job description provided by Defendant Penn Mutual was false and misleading, but denied Plaintiff's claim despite such knowledge, in furtherance of the defendants' common scheme to defraud Plaintiff.

117.    By intentionally relying on the false and misleading document as a basis upon which to deny Plaintiff's claim for LTD benefits, both defendants precluded Plaintiff from obtaining a full and fair review of his claim, in violation of ERISA.

118.    The defendants' use of the mail and/or interstate wires for the purpose of transmitting:

a.   a fraudulent and incomplete job description and/or application materials, with the intent of furthering the defendants' common scheme to defraud Plaintiff; and

b.   a statement applying a proscribed meaning for the term "regular occupation" as a basis for denying Plaintiff's rightful claim for benefits, with the intent of furthering the defendants' common scheme to defraud Plaintiff;

c.   improper threats to deny Plaintiff's application on the misrepresented basis of unresponsiveness that were intended to further the defendants' common scheme to defraud him; and

d.   a written denial of Plaintiff's rightful claim for benefits, founded upon the fraudulent bases stated, *supra*, with the intent of furthering the defendants' common scheme to defraud Plaintiff,

constituted a "pattern of racketeering activity", within the meaning of 18 U.S.C.

§1961(5).

119.    Plaintiff gave Reliance timely written notice of his intent to appeal the denial of

benefits on or about December 10, 2006.  At that time Plaintiff also demanded a copy of all

relevant records related to the determination of his claim.  [A copy of Plaintiff's request for

records, dated December 10, 2006, is included herewith as Ex. "O"].

120.    Despite the excessive delay in processing Plaintiff's claim, and the improper

threats regarding alleged unresponsiveness, and notwithstanding Plaintiff's request that these

materials be forwarded with a sense of urgency, Reliance refused to respond.

121.    Plaintiff's ability to effectively appeal the denial of his claim was severely and

irreparably impaired by Reliance's failure to respond to his demand in a timely manner because

Reliance had informed Plaintiff that it would refuse to consider any appeal filed more than 180

days after the initial denial.

122.    On December 11, 2006, in response to a separate request for information, Plaintiff

received via facsimile from Gerry Russell of Penn Mutual's human resources department, a copy

of an incorrect job description that had been forwarded to Reliance in connection with Plaintiff's

claim for benefits.  [A copy of the facsimile from G. Russell to T. Kelly, dated December 11,

2006, is included herewith as Exhibit "P"]

123.    Plaintiff again contacted Reliance, demanding that his entire administrative file be

forwarded, and reminding Reliance of the time-sensitive nature of its obligations.

124.    Plaintiff received some materials from Reliance in response to his second request

for information, on or about six weeks after his initial demand.

125.    Upon information and belief, however, Reliance committed an additional act of fraud upon Plaintiff by intentionally omitting and withholding significant material information from the administrative file, and by failing to provide Plaintiff with a complete copy of records related to his eligibility for benefits under the Plan, in violation of ERISA.

126.    Ms. Barber's October 23, 2006 letter to Plaintiff misrepresented that:

a.    "We will, upon specific request and free of charge, provide copies of all documents, records and/or other information relevant to your claim for benefits. We will also, upon specific request and free of charge, provide copies of any internal rule, guideline, protocol or other similar criterion (if any) relied upon in making this determination."

127.    Notwithstanding Ms. Barber's misrepresentations, Reliance intentionally and omitted several pieces of critical documentation from Plaintiff's administrative file, in furtherance of the defendants' common scheme to defraud him.  By doing so, Plaintiff was denied a full and fair opportunity to have the initial denial of his claim reviewed on appeal, in violation of ERISA.

128.    Upon information and belief, the documents omitted from Plaintiff's administrative file, if produced, would have immediately alerted Plaintiff to the defendants' common scheme to defraud him.  For example:

a.    Defendant Reliance intentionally and fraudulently omitted requested copies of correspondence between and among the defendants regarding Plaintiff's claim;

b.    Defendant Reliance intentionally and fraudulently omitted requested copies of tapes or transcripts of all recorded communications pertaining to Plaintiff's claim;

c.   Defendant Reliance intentionally and fraudulently omitted the names and curriculum vitae of all persons involved in the review of Plaintiff's claim;

d.   Defendant Reliance intentionally and fraudulently omitted the requested copies of correspondence between the two defendants regarding the financial impact of Plaintiff's claim on the policy owner.

129.   Such materially fraudulent omissions compromised Plaintiff's opportunity to obtain a full and fair review of the decision to deny his claim for benefits under the Plan.  These intentional omissions of materially relevant information from a compilation of other material that was delivered to Plaintiff through the mail was intended to defraud Plaintiff, in furtherance of the defendants' common scheme, in violation of 18 U.S.C. 1341.

130.   Although Reliance withheld various materials from Plaintiff, the significant deficiencies plaguing Reliance's record keeping processes were evidenced by what it actually *produced*.

131.   Specifically, Reliance produced to Plaintiff the January 5, 2007 report of claims examiner William Burwell.  With Mr. Burwell's report, Reliance produced to Plaintiff the confidential names, policy numbers, dates of application, internal comments, group policyholder names, and claim numbers of no less than thirteen other long-term disability applicants.  [A copy of Mr. Burwell's report is incorporated by reference, but is being withheld as a courtesy to protect the confidentiality of these potential witnesses.  Plaintiff will make Mr. Burwell's report immediately available to the Court upon request, and respectfully reserves the right to rely on the document in subsequent filings.]

132.    Reliance also failed to provide complete copies of several records, instead using "screen shots" of various employees' computer terminals as an insufficient method by which to provide discovery.

133.    For example, Reliance provided some, but not all, information reviewed, relied upon, and/or created by a nurse named Marianne P. Lubrecht, who urged the denial of Plaintiff's claim.  [A copy of the screen shot from Ms. Lubrecht's computer terminal is included herewith as Exhibit "Q"]

134.    Upon information and belief, Ms. Lubrecht is not a medical doctor and is not licensed to practice medicine in the State of New Jersey.  Nevertheless, and despite the fact that Lubrecht has never met Plaintiff, examined him, discussed his injuries with him, or discussed the case with Plaintiff's medical doctor, Reliance denied Plaintiff's claim, based in part, on the fact that Nurse Lebrecht apparently disagreed with the reasoned medical opinion of Plaintiff's board-certified orthopedic surgeon.

135.    Making use of the incomplete administrative file at his disposal, Plaintiff appealed the denial of his claim under the Plan on or about February 6, 2007 and included a true and accurate copy of his employee job description with his appeal.

136.    On March 12, 2007, more than ten months after Plaintiff had become eligible for LTD benefits, Reliance wrongly upheld its denial of Plaintiff's claim and communicated that decision to Plaintiff by mail.  [A copy of the letter from R. O'Neill to T. Kelly, dated March 12, 2007 is included herewith as Ex. "R"]

137.    Reliance's untimely denial of Plaintiff's appeal was based, at least in part, on the newly-created February 21, 2007 report of Howard Choi, M.D., who had allegedly reviewed

some of Plaintiff's medical records *after* his claim was denied and *after* his appeal was filed. [A copy of Choi's report is included herewith as Exhibit "S"]

138.    Of course, because Choi's report was not written until after Plaintiff's appeal was filed, Plaintiff was necessarily precluded from examining or challenging its contents, thereby depriving him of a full and fair review of the denial of his claim, in violation of ERISA.

139.    Upon information and belief, Mr. Choi is not licensed to practice medicine, nor is he licensed to provide any services of a medical nature in the State of New Jersey.

140.    Also upon information and belief, Choi was provided incorrect and incomplete information by Defendant Reliance upon which to conduct a proper review of Plaintiff's appeal. Consequently, Choi's own report is similarly incorrect and incomplete.

141.    Choi's report did not conclude that Plaintiff could perform the duties of his regular occupation.  Instead, the report identified several missing pieces of information that would permit a finder of fact to develop a significantly more objective evaluation, stating, "It is not clear at what level the 'disc herniation L-spine' was, when it was first noted, how it was diagnosed (e.g., clinically, MRI), and whether it was a chronic/degenerative condition."

142.    Likewise, Choi's report did not specifically contradict the opinion of Plaintiff's physician, but merely identified a number of additional medical records that would enable a more conclusive determination regarding Plaintiff's disability.  Nevertheless, Choi did not request those records, nor did he recommend or request that an independent medical evaluation of Plaintiff be performed for the purpose of rendering a second medical opinion.

143.    For example, Choi observed that Plaintiff's medical records did not include a functional capacity evaluation.  However, Plaintiff was not asked to provide one.  Reliance could

have made that request, but elected to abstain from doing so, notwithstanding the fact that Plaintiff's functional capacity was the primary issue on appeal.

144.     Also, despite its right to do so under the terms of the LTD Plan, Reliance did not require that Plaintiff be physically interviewed and/or examined by Choi or any physician other than his own.

145.     Choi did not meet with Plaintiff at any time.  He did not examine Plaintiff.  He did not speak with Plaintiff or communicate with Plaintiff in writing.  Likewise, upon information and belief, Choi did not review X-rays or MRIs taken of Plaintiff's back or spine, nor did he communicate with Plaintiff's own treating physician.  In short, Choi lacked any objective basis upon which to contradict Plaintiff's own physician, as his report so indicates.

146.     To be sure, Choi's report did not conclude that Plaintiff was capable of performing his duties as an employee.  Similarly, Choi did not conclusively determine that Plaintiff could perform any work whatsoever.  Instead, his report simply concluded that "there is no objective basis for any restrictions or limitations from sedentary-level work provided in the documentation available for review for any time period."

147.     However, as alleged, *supra*, Plaintiff was employed by Penn Mutual as a Managing Director/Advanced Planning/Compliance Officer, an occupation that required more than sedentary-level work.

148.     Both Choi and Reliance flatly ignored the basis for Plaintiff's appeal and again arbitrarily denied his claim on the incorrect supposition that Plaintiff was employed as an Insurance Agency Manager.

149.     For example, in its denial of Plaintiff's appeal, Reliance stated, in pertinent part:

a.   "You ceased working at your occupation of **Insurance Agency Manager** on November 26, 2005 due to chronic back pain stemming from a motor vehicle accident which occurred on November 7, 2005.  This particular occupation is categorized by the Dictionary of Occupation Titles (DOT) published by the Department of Labor as sedentary." [emphasis added]; and,

b.   "Since it has been determined that your occupation would be correctly classified as sedentary, and since there is a lack of medical evidence supporting sedentary work impairment, you would not be entitled to disability benefits."

150.   However, Plaintiff was not an Insurance Agency Manager and he informed Reliance of that fact verbally and in writing on numerous occasions.  The two occupations are wholly dissimilar and involve equally disparate duties.

151.   In reality, Plaintiff's correct occupation (i.e., Managing Director/Compliance Officer) would not be correctly classified as sedentary.  Therefore, Choi's report provided no support for the denial of Plaintiff's claim, because it incorporated an entirely invalid basis for review.

152.   Reliance should not have relied upon Choi's report in any event, because it was not authored until after Plaintiff's claim was denied, nor was it made available to Plaintiff as part of the complete administrative file used in that denial.

153.   Accordingly, Plaintiff was denied a full and fair opportunity to dispute the contents and obvious errors contained in the report when he appealed Reliance's initial determination.

154.    Defendant Reliance provided no alternative basis for its denial of Plaintiff's appeal.

155.    Plaintiff is entitled to disability benefits under the Plan, and his claim was improperly denied, and Reliance is estopped from now alleging otherwise and/or asserting any additional basis for denial.

156.    Reliance unlawfully withheld benefits owed Plaintiff, through its fraudulent conduct, administrative errors, and arbitrary acts, with the intent of furthering the defendants' common scheme to defraud Plaintiff, and through no fault, error, or omission of Plaintiff, who timely complied with all policy provisions, obligations, and requests made of him.

157.    The delay in processing Plaintiff's claim was of such an egregious duration that it constituted a constructive denial of the claim and therefore breached the Plan's terms and also violated ERISA.

158.    Reliance's intentional application of a knowingly false and misleading definition for the undefined term "regular occupation" that Reliance knew had been judicially rejected by this Court, for the purpose of denying Plaintiff's claim, constituted fraud, a breach of the Plan, an an act of bad faith, and also violated ERISA.

159.    Both defendants were repeatedly made aware of their record-keeping errors verbally and in writing, but refused to correct, withdrawal from, or remediate the common scheme to defraud Plaintiff in which they were engaged.

160.    Reliance willfully upheld its unlawful decision to deny Plaintiff's claim without having a legitimate basis for doing so, in breach of the Plan and in violation of ERISA, and with the intent of furthering the defendants' common scheme to defraud Plaintiff.

161.    Reliance is now estopped from withholding benefits due Plaintiff from May 2006 forward, in light of the company's clear errors and fraudulent conduct regarding the evaluation and processing of Plaintiff's claim.

162.    Upon information and belief, Reliance has a documented history of such unlawful conduct and has been found liable for similar violations in New Jersey and elsewhere.  The company's misconduct in the present case was willful and deliberate, and was undertaken in bad faith and contrary to the provisions of ERISA, RICO and other laws.

### COUNT I
### CLAIM FOR BENEFITS UNDER ERISA
### (as to Defendant Reliance Standard)

163.    The allegations above are hereby incorporated by reference as though they were fully set forth again herein.

164.    The long-term disability policy issued by Defendant Reliance Standard, made available to the employees of Defendant Penn Mutual, constituted an employee welfare benefit plan within the meaning of ERISA.

165.    Defendant Reliance exercises discretionary control or authority over Plan management or Plan assets, has discretionary authority or responsibility for the administration of the Plan, or provides investment advice to the Plan for compensation, or has authority or responsibility to do so, and is subject to fiduciary responsibilities owed to Plaintiff.

166.    Reliance breached its fiduciary responsibilities, in violation of ERISA.

167.    Plaintiff was totally disabled as that term is defined by the Plan.

168.    Pursuant to the terms of the Plan, Reliance was obligated to provide long-term disability benefits to Plaintiff, provided that Plaintiff complied with all of his obligations under the Plan.

169.    Plaintiff complied with all of his obligations under the Plan.

170.    Instead of promptly paying benefits to Plaintiff as it was required to do under the Plan, Defendant Reliance improperly delayed the processing of Plaintiff's application for benefits from May 2006 until November 2006, which constituted a constructive denial of Plaintiff's claim.

171.    Defendant Reliance subsequently issued an improper written denial of Plaintiff's claim.

172.    Defendant Reliance incorrectly premised its denial of Plaintiff's claim for benefits under the Plan, at least in part, on the knowingly incorrect basis that Plaintiff was employed as an Insurance Agency Manager, and that he was responsible for the duties of an Insurance Agency Manager.

173.    Plaintiff was not employed an Insurance Agency Manager, and Defendant Reliance knew that Plaintiff was not employed as an Insurance Agency Manager.

174.    Defendant Reliance continued to intentionally and unlawfully deny Plaintiff the benefits to which he was entitled, with full knowledge of the wrongfulness of its conduct, despite Plaintiff's submission of a true and accurate job description.

175.    Additionally, Defendant Reliance incorrectly based its denial of Plaintiff's claim for benefits under the Plan, at least in part, on its knowing and intentional use of an incorrect definition for the term "regular occupation".

176.    Both this Court and the Third Circuit Court of Appeals previously held that Defendant Reliance's application of that definition as a basis for denial was improper and that it constituted a violation of ERISA.

177.    With knowledge of that holding, and with willful disregard for the Court's Order, Defendant Reliance applied the same unlawful basis in its denial of Plaintiff's claim in the present case.

178.    Since May 2006, Reliance has failed to pay Plaintiff benefits to which he is entitled under the Plan.

179.    Reliance's failure to pay Plaintiff benefits under the Plan constitutes a violation of the Plan itself and also a violation of Reliance's obligations as a fiduciary under the Plan.

180.    Reliance failed to follow the procedures for the review of claims, as set forth in ERISA, 29 U.S.C. §1133.

181.    Plaintiff was denied a reasonable opportunity for a full and fair review of his claim for benefits, and was denied a full and fair review of the decision to refuse to pay benefits under the Plan.

182.    Denial of Plaintiff's claims was arbitrary and capricious, violated the terms of the Plan, and violated the provisions of ERISA.

**WHEREFORE**, Plaintiff demands judgment against Defendant Reliance, declaring that Defendant Reliance provide Plaintiff with benefits owed under the terms of the Plan in an amount to be determined, plus interest, costs of suit, attorney's fees, and such other damages and relief as may be justified, including payment of pension proceeds, 401(k) contributions, insurance premiums, group insurance coverage, and restoration of other benefits owed Plaintiff to which Plaintiff is entitled from May 2006 through the date of judgment.

## COUNT II
## CLAIM FOR BENEFITS UNDER ERISA
### (As to Defendant Penn Mutual)

183.    Plaintiff incorporates by reference the allegations contained above, as though fully set forth again herein.

184.    The long-term disability policy issued by Defendant Reliance Standard, and made available to the employees of Defendant Penn Mutual, constituted an employee welfare benefit plan within the meaning of ERISA.

185.    Defendant Penn Mutual was a fiduciary of the Plan, within the meaning of 29 U.S.C. §1002(21)(A)(i).  Specifically, Defendant Penn Mutual held itself out as having authority and control with regard to management of Plan's application process, by requiring employees to notify Penn Mutual of their intent to claim benefits under the Plan; and was then responsible for timely provision of application materials to employees who intended to apply for benefits under the Plan; and was responsible for timely facilitation of such claims by forwarding completed application materials and other correct documentation to the Plan Administrator (i.e., Defendant Reliance) so that a claimant's eligibility for benefits could be determined.

186.    Defendant Penn Mutual breached its fiduciary duty to Plaintiff by communicating certified misleading, incorrect and/or incomplete information regarding Plaintiff's employment to Defendant Reliance, in connection with Plaintiff's claim under the Plan, with knowledge that correctness of such information was necessary to properly evaluate Plaintiff's claim for benefits under the Plan on a timely basis.

187.    Defendant Penn Mutual's breach of its duties to Plaintiff contributed to the unlawful denial of Plaintiff's claim for disability benefits and Plaintiff was damaged as a result of that denial.

188.     Plaintiff complied with all of his own obligations under the Plan.

189.     As a result of Defendant Penn Mutual's breach of its fiduciary duties owed to Plaintiff, Plaintiff was not afforded a full and fair review of his application for benefits, nor was he afforded a full and fair review of the decision to deny his claim for benefits under the Plan.

190.     By its actions, Defendant Penn Mutual failed to discharge its duties with respect to the Plan with the requisite care, skill, prudence and diligence necessary under the circumstances, in violation of 29 U.S.C. §1104(a)(1)(B).

191.     Additionally, as a co-fiduciary of Defendant Reliance, Defendant Penn Mutual is liable for all conduct and resulting damages caused by Defendant Reliance, because Defendant Penn Mutual's conduct caused or enabled co-fiduciary Defendant Reliance to breach its own duties, in violation of 29 U.S.C. §1105(a)(2).

**WHEREFORE**, Plaintiff demands judgment against Defendant Penn Mutual, declaring that Defendant Penn Mutual provide Plaintiff with benefits owed under the terms of the Plan in an amount to be determined, plus interest, costs of suit, attorney's fees and such other damages and relief as may be justified, including payment of pension proceeds, 401(k) contributions, insurance premiums, group insurance coverage, and restoration of other benefits owed Plaintiff to which Plaintiff is entitled from May 2006 through the date of judgment.

### COUNT III
### FAMILY MEDICAL LEAVE ACT
### <u>(As to Defendant Penn Mutual)</u>

192.     Plaintiff incorporates the above allegations by reference as though fully set forth again herein.

193.     Plaintiff was an employee of Defendant Penn Mutual within the meaning of the Family Medical Leave Act of 1993 ("FMLA"), 29 U.S.C. §2601 <u>et</u> <u>seq.</u>

194.    Defendant Penn Mutual was an employer as that term is defined by the FMLA.

195.    Plaintiff became eligible to receive a total of twelve (12) workweeks of leave between November 2005 and at least February 2006, as the result of a serious health condition that rendered him unable to perform the functions of his position as an employee.

196.    Plaintiff notified Defendant Penn Mutual of his need for medical leave, and provided all requested information, including certifications from his personal physician, on a timely basis.

197.    Plaintiff was granted leave under the FMLA by Defendant Penn Mutual, which, according to Penn Mutual's records, was to last until and including February 24, 2006.

198.    Upon expiration of Plaintiff's leave under the FMLA, Defendant Penn Mutual was obligated to restore Plaintiff to his position of employment as it existed when the leave commenced, or to alternatively restore Plaintiff to an equivalent position with equivalent employment benefits, pay, and other terms and conditions of employment.

199.    Defendant Penn Mutual violated the FMLA by informing Plaintiff on February 21, 2006, prior to the expiration of his medical leave, that it would refuse to restore Plaintiff to his position of employment as it existed when the leave commenced.

200.    Defendant Penn Mutual further violated the FMLA by refusing to restore Plaintiff to an equivalent position with equivalent benefits, pay, and other terms and conditions of employment, and by engaging in a pattern of related conduct over a protracted period that substantially interfered with Plaintiff's ability to remain eligible for employment in an equivalent position.

201.    Defendant Penn Mutual committed these violations of the FMLA in bad faith.

202.     Plaintiff was damaged as a result of Defendant Penn Mutual's willful violations of the FMLA.

**WHEREFORE**, Plaintiff demands judgment against Defendant Penn Mutual in an amount equal to any wages, salary, employment benefits, or other compensation denied or lost by reason of the FMLA violations, to be determined, plus interest, costs, punitive damages, attorney's fees and such other relief as may be justified, including applicable matching and other contributions to Plaintiff's qualified retirement accounts, and proper adjustments to and continuation of, any group plans and/or retirement benefits to which Plaintiff may be entitled.

## COUNT IV
## RICO – 18 U.S.C. 1962(b)
## (As to Both Defendants)

159.     Plaintiff repeats and realleges all of the allegations in the Complaint as if they were fully set forth at length again herein.

160.     Defendants Reliance Standard Life Insurance Company and The Penn Mutual Life Insurance Company are each culpable "persons" within the meaning of 18 U.S.C. §1961(3).

161.     Defendants Reliance Standard Life Insurance Company and The Penn Mutual Life Insurance Company are a group of individuals, entities, and corporations associated in fact, thereby constituting an "enterprise" within the meaning of 18 U.S.C. §1961(4).

        a.   Defendant Penn Mutual is a major insurance carrier that is engaged in the sale of insurance and securities products in New Jersey and elsewhere.  As an employer of thousands of individuals nationwide, Penn Mutual provides an employee welfare benefits plan through a contractual agreement with Defendant Reliance Standard Life Insurance Company.

b.   Defendant Reliance Standard serves as the Plan Administrator for Defendant Penn Mutual and also has discretionary authority regarding the provision of benefits under the Plan.  Defendant Reliance receives financial benefit from Defendant Penn Mutual for the discharge of its contractual obligations.

c.   The two defendants share responsibility for management of the Plan, inasmuch as Penn Mutual is a conduit through which eligible applicants must pass their completed application materials.  Penn Mutual is then obligated to supplement the applicant's materials with documentation such as a true and accurate job description before promptly forwarding the application materials to Defendant Reliance for its review and determination of eligibility.  A claimant cannot obtain benefits under the Plan without the participation of both defendants.

d.   Both defendants have a shared common financial interest in the denial of an employee's claim for benefits under the Plan and both defendants benefit financially whenever a claim for benefits is denied.

e.   Defendant Penn Mutual has a financial interest in the denial of its employees' claims for long-term disability benefits under the Plan.  This is true because whenever Defendant Reliance determines that an employee is eligible for benefits, Defendant Penn Mutual is obligated to maintain life insurance coverage for that employee at the company's expense. However, if Defendant Reliance denies an employee's claim for benefits then Defendant Penn Mutual is relieved of this obligation.

f.  Defendant Penn Mutual has an additional financial interest in the denial of its employees' claims for long-term disability benefits under the Plan. This is true because if Defendant Reliance determines that an employee is eligible for benefits, then Defendant Penn Mutual is obligated to continue providing matching retirement benefits in the form of what is known as "RSP contributions". However, if Defendant Reliance denies an employee's claim for benefits then Defendant Penn Mutual is relieved of this obligation.

g.  Defendant Penn Mutual has an additional financial interest in the denial of its employees' claims for long-term disability benefits under the Plan. This is true because if Defendant Reliance determines that an employee is eligible for benefits, then Defendant Penn Mutual is obligated to continue making contributions toward that employee's pension. However, if Defendant Reliance denies an employee's claim for benefits then Defendant Penn Mutual is relieved of this obligation.

h.  Defendant Penn Mutual has an additional financial interest in the denial of its employees' claims for long-term disability benefits under the Plan. This is true because if Defendant Reliance determines that an employee is eligible for benefits, then that employee continues to accrue years of service toward "vesting" in certain retirement benefits. However, if Defendant Reliance denies an employee's claim for benefits then the employee ceases to accrue years of service.

    i.   Defendant Penn Mutual has an additional financial interest in the denial of its employees' claims for long-term disability benefits under the Plan. This is true because, upon information and belief, the premium paid to Defendant Reliance by Defendant Penn Mutual is affected by the amount paid by Defendant Reliance to Plan beneficiaries in the form of long-term disability benefits.

    j.   Likewise, Defendant Reliance has a financial interest in the denial of claims for long-term disability benefits under the Plan.  This is true because whenever the same entity that determines whether a claimant is disabled must also pay for disability benefits, that entity has a financial incentive to find him or her not disabled.

    k.   The two defendants, having a common interest in the denial of Plaintiff's claim for LTD benefits under the Plan, intended to and did commit many related fraudulent acts as a single enterprise, in furtherance of a common scheme to defraud Plaintiff of benefits to which he was entitled, for the mutual benefit of the defendants.

162.    Defendants Reliance Standard Life Insurance Company and The Penn Mutual Life Insurance Company engaged in numerous acts of "racketeering" activity, within the meaning of 18 U.S.C. 1961(1).  Such acts of racketeering activity constitute the following federal crimes:

    a.   "frauds and swindles", pursuant to 18 U.S.C. 1341; and

    b.   "fraud by wire, radio or television", pursuant to 18 U.S.C. 1343.

163.    Defendants Reliance and Penn Mutual committed multiple acts of mail fraud by, having devised or intending to devise a scheme to defraud Plaintiff, obtained and withheld money from him that was rightfully his by means of false or fraudulent pretenses, representations, or promises, and for the purpose of executing such scheme did repeatedly place in the United States Post Office or an authorized depository for mail matter, matter to be sent or delivered by the Postal Service, an offense punishable by fine and/or imprisonment under 18 U.S.C. §1341.

164.    With the intent of furthering their common enterprise and scheme to defraud Plaintiff, the defendants together engaged in the following acts of mail fraud, in violation of 18 U.S.C. 1341:

   a.  Defendant Penn Mutual placed matter in the mail to Defendant Reliance on or about early June 2006 that contained a misrepresentation of Plaintiff's employment duties, with knowledge and intent that such a misrepresentation would result in a wrongful denial of Plaintiff's claim for LTD benefits;

   b.  Defendant Reliance placed additional matter in the mail to Plaintiff on or about June 9, 2006  that contained a misrepresentation that the company had begun processing Plaintiff's claim;

   c.  Defendant Reliance placed additional matter in the mail to Plaintiff on or about July 18, 2006 that contained a misrepresentation that Reliance had instead begun initial processing of Plaintiff's application as of that date;

   d.  Defendant Reliance placed matter in the mail to Plaintiff's physical therapist on or about August 2, 2006, threatening to deny Plaintiff's

application on the basis of non-responsiveness, despite having knowledge that Plaintiff and all third parties had fully complied with Reliance's requests for information;

e.   Defendant Reliance caused multiple pieces of matter to be placed in the mail in response to requests for information from third parties, including Plaintiff's physician, Plaintiff's Employer, and Plaintiff's physical therapist;

f.   Defendant Reliance placed matter in the mail to Plaintiff on or about October 23, 2006, denying Plaintiff's claim and intentionally incorporating a fraudulent definition for the term "regular occupation" as a basis for that denial, which this Court held in <u>Lasser v. Reliance</u> to be an unreasonable and impermissible basis under ERISA.  Reliance intended that Plaintiff would rely on its representation of that definition as true, and it was reasonable for Plaintiff to do so;

g.   Defendant Reliance placed matter in the mail to Plaintiff on or about October 23, 2006, that denied Plaintiff's claim on false and misleading pretenses, with knowledge of its incorrectness and with knowledge that the errors were material;

h.   Defendant Reliance placed matter in the mail to Plaintiff on or about October 23, 2006, fraudulently representing to Plaintiff that it would provide Plaintiff with a complete copy of all relevant records used in determining his eligibility for benefits under the LTD Plan, when in fact Reliance had no intention of doing so;

i.   Defendant Reliance placed matter in the mail to Plaintiff on or about February 2007 that contained a false representation to Plaintiff that it constituted a complete copy of the records related to the determination of his eligibility for benefits.  The correspondence was fraudulent because the matter did not contain a full copy of the administrative record, and instead intentionally omitted several material items, the omission of which was intended to deny Plaintiff a full and fair opportunity to have the denial of his application reviewed, and to further the defendants' common scheme to defraud him.

j.   Upon information and belief, Defendant Reliance placed matter in the mail to Dr. Choi subsequent to the submission of Plaintiff's appeal but prior to the denial of that appeal, in which Reliance made knowing and intentional material misrepresentations and omissions regarding the level of activity required of Plaintiff's employment that were intended to influence Choi's opinion to the detriment of Plaintiff.

k.   Upon information and belief, on or about February 21, 2007, Dr. Choi placed matter in the mail at the direction of Defendant Reliance, the delivery of which was necessary to further the defendants' common scheme to defraud Plaintiff.

l.   Defendant Reliance placed matter in the mail to Plaintiff on or about March 12, 2007 that contained a fraudulent denial of Plaintiff's appeal of the denial of his claim for LTD benefits.  The denial was fraudulent because Reliance again knowingly incorporated an incorrect job

description in its review of Plaintiff's claim.  In the denial, Reliance stated that Plaintiff was an "Insurance Agency Manager".  However, as Plaintiff had repeatedly informed Reliance, he was never an Insurance Agency Manager with Penn Mutual.  Nevertheless, with full knowledge of the wrongfulness of its conduct, Reliance used the mail to communicate its denial of Plaintiff's appeal on that false pretense, in furtherance of the defendants' common scheme to defraud him;

m.  Defendant Reliance caused to be placed in the mail several matters from Plaintiff and from co-defendant Penn Mutual that were related to Plaintiff's claim for LTD benefits (i.e. application materials, requests for information, requests for a copy of the administrative record, physician certifications, and an appeal of his denial) and that were intended to further the defendants' common scheme to defraud Plaintiff.

165.    Defendants Reliance Standard Life Insurance Company and The Penn Mutual Life Insurance Company, having devised or intending to devise a scheme to defraud Plaintiff, obtained and withheld money from him to which he was rightfully entitled, by means of false or fraudulent pretenses, representations, and promises, by transmitting or causing to be transmitted by means of wire, radio, or television communication in interstate commerce, writings, signs, signals, pictures, and sounds for the purpose of executing such scheme or artifice, an offense punishable by fine and/or imprisonment under 18 U.S.C. 1343.

166.    With the intention of furthering their common enterprise and scheme to defraud Plaintiff, the defendants engaged in the following acts of wire fraud, in violation of 18 U.S.C. 1343:

a.   Both defendants communicated with Plaintiff by telephone on multiple occasions between November 2005 and March 2007 regarding his claim;

b.   Upon information and belief, both defendants communicated internally and with one another by means of electronic mail and/or telephone regarding their common scheme to defraud Plaintiff. The exact times of such correspondence are unknown to Plaintiff but were requested by him on or about December 10, 2007 and are being withheld by Defendant Reliance.

c.   On or about December 11, 2007 Defendant Penn Mutual sent Plaintiff, by means of interstate wire, a facsimile that contained one of several erroneous job descriptions used by the defendants in the furtherance of their common scheme to defraud Plaintiff.

d.   Upon information and belief, Defendant Reliance communicated with Dr. Choi by interstate wire and provided false, incomplete and misleading information regarding facts necessary for a full and fair review of Plaintiff's medical records as they related to his claim for LTD benefits. Such information is exclusively within the possession of the defendants and was not made available to Plaintiff.

167.   Such acts of racketeering activity constitute a "pattern of racketeering activity" within the meaning of 18 U.S.C. 1961(5) in that: (a) such acts of racketeering activity are and were related to each other through a common plan, common purpose, common motive, common participants, a common victim, a common means of commission, and/or a common method of operations; (b) such acts occurred within the last ten years and continued, uninterrupted, over a

sustained period of time of several years; and (c) in light of the fact that the defendants' common enterprise has already carried out its common scheme to the detriment of multiple victims, there is a specific threat that the enterprise will repeat such fraudulent and criminal acts to defraud other beneficiaries.

168.    In violation of 18 U.S.C. 1962(b), Defendants Reliance Standard Life Insurance Company and The Penn Mutual Life Insurance Company directly acquired or maintained an interest in, and control of, their common enterprise, which was engaged in, and its activities affected, interstate commerce.

169.    As a result of the defendants' violations of 18 U.S.C. 1962(b), Plaintiff was injured in his business and property.

**WHEREFORE**, Plaintiff demands judgment against both of the defendants as follows: requiring the defendants to provide Plaintiff with an accounting of all monies that he is owed under the Plan; requiring the defendants to pay Plaintiff, as his interest shall appear, three-fold damages as may be found due to Plaintiff in the rendering of such an accounting; costs of suit and attorneys fees; restoration of Plaintiff's group life insurance coverage; contributions to and restoration of all retirement benefits to which Plaintiff is entitled, other damages as may be appropriate, and such other equitable relief as the Court may deem appropriate.

**COUNT V**
**RICO – 18 U.S.C. 1962(c)**
**(As to Both Defendants)**

170.    Plaintiff repeats and realleges all of the allegations in the Complaint as if fully set forth at length again herein.

170.    In violation of 18 U.S.C. 1962(c), both defendants, continuously, between approximately May 2006 and the present, in the District of New Jersey and elsewhere, being

employed by or associated with a common enterprise, have conspired, confederated, and agreed with each other and have conducted or participated, directly or indirectly, in the conduct of the enterprise's affairs through a common pattern of racketeering activity.

171.    As a result of the defendants' violations of Title 18, United States Code, Sections 1962(c) and 1964, Plaintiff has been injured in his business and property.

**WHEREFORE**, Plaintiff demands judgment against both of the defendants as follows: requiring the defendants to provide Plaintiff with an accounting of all monies that he is owed under the Plan; requiring the defendants to pay Plaintiff, as his interest shall appear, three-fold damages as may be found due to Plaintiff in the rendering of such an accounting; costs of suit and attorneys fees; restoration of Plaintiff's group life insurance coverage; contributions to and restoration of all retirement benefits to which Plaintiff is entitled, other damages as may be appropriate, and such other equitable relief as the Court may deem appropriate.

## COUNT VI
## RICO – 18 U.S.C. 1962(d)
## (As to Both Defendants)

171.    Plaintiff repeats and realleges all of the allegations in the Complaint as if they were fully set forth at length again herein.

172.    Continuously, between approximately May 2006 to the present, in the District of New Jersey and elsewhere, the defendants did knowingly and willfully conspire, confederate, and agree with each other and with others to conduct and participate, directly and indirectly, in the conduct of the affairs of a common criminal enterprise through a pattern of racketeering activity as aforesaid, and therefore caused damage to Plaintiff's business and property, in violation of Title 18, United States Code, Sections 1962(d) and 1964.

**WHEREFORE**, Plaintiff demands judgment against both of the defendants as follows: requiring the defendants to provide Plaintiff with an accounting of all monies that he is owed under the Plan; requiring the defendants to pay Plaintiff, as his interest shall appear, three-fold damages as may be found due to Plaintiff in the rendering of such an accounting; costs of suit and attorneys fees; restoration of Plaintiff's group life insurance coverage; contributions to and restoration of all retirement benefits to which Plaintiff is entitled, other damages as may be appropriate, and such other equitable relief as the Court may deem appropriate.

## JURY DEMAND

Plaintiff respectfully demands a jury trial as to all matters alleged herein that are so triable.

## CERTIFICATION

Plaintiff, by his attorneys, hereby certifies that the matter in controversy is not the subject of any other pending or contemplated judicial or arbitration proceeding.  Plaintiff is not currently aware of any other party that should be joined in this action.

Respectfully submitted,
KELLY LAW OFFICES, LLC
Attorneys for Plaintiff

Dated: **June 12, 2009**        By: _____
                                    Thomas P. Kelly III