<u>Not for Publication</u>

|   |   |
|---|---|
| THOMAS P. KELLY, JR., <br><br>          Plaintiff, <br><br>          v. <br><br>RELIANCE STANDARD LIFE INSURANCE COMPANY, and THE PENN MUTUAL LIFE INSURANCE COMPANY, <br><br>          Defendants. | Civil No.: 09-2478  (KSH) <br><br><u>**OPINION AND ORDER**</u> |

**Katharine S. Hayden, U.S.D.J.**

The Court is in receipt of submissions from counsel [D.E. 168, 169, and 170] related to a motion to enforce settlement [D.E. 126] brought by plaintiff.

The parties are fully familiar with the facts of this case; procedurally, the parties are well informed too, having engaged in many years of litigation.  In the motion, plaintiff Thomas P. Kelly ("Kelly") seeks the money payment that one of the two defendants, Reliance Standard Life Insurance Company ("Reliance"), agreed to as part of the settlement terms.  [D.E. 121, 126.]  The full terms of the agreement remain in dispute, and the settlement is only between Kelly and Reliance.  While Kelly is frustrated with the length of time it has taken to resolve his issues with Reliance, the Court's review of the record reveals that the movement Kelly wants is stalled by all parties' confusion over what happens next with his claims against the other defendant, Penn Mutual Life Insurance Company ("PM").

In the earlier written opinion [D.E. 106] that granted summary judgment to Kelly on his claims in count 1 against Reliance, the Court specified in a footnote that "because neither Kelly nor Penn Mutual presented any arguments relating to Kelly's 'specific allegations' against Penn Mutual, the Court has not granted summary judgment as to [c]ount [2]" (the count against PM).  In

1

the order [D.E. 107] accompanying the written opinion, the Court originally directed "that defendant Penn Mutual Life Ins. Co. shall immediately provide all benefits consistent with the rulings set forth in the Court's written opinion granting Kelly's motion for summary judgment." That language was in error, as swiftly pointed out in a letter from counsel for PM. [D.E. 109.] The Court's amended order [D.E. 110] made clear that the Court had not resolved count 2, and so the amended language specifies that "Kelly's claim [for benefits against Reliance] is hereby **REMANDED** to defendant Reliance for continued administration and payment of benefits, consistent with the terms of this Order." It was to address that requirement that Kelly and Reliance pursued negotiations and ultimately reached agreement on certain terms, per an email from Reliance's attorney (reproduced in D.E. 121-1 and elsewhere in the record):

> While walking to the train, my client decided to accept your final offer in order to put the matter to rest. We will pay 400,000 to satisfy the benefit claim, Judge Hayden will decide the fee motion and no party will appeal the court's decisions, re benefits, RICO, etc. including the fee ruling.

But that email only went partway toward achieving a resolution, as the motion papers demonstrate. [*See* D.E. 127 (Reliance Opp'n), D.E. 128 (PM Opp'n).] When Reliance sought to factor in Kelly's claims against PM in a proposed release, the deal fell apart. This core disputed issue has financial consequences—Kelly is maintaining that PM is a co-fiduciary with Reliance and as such owes him whatever amounts Reliance has not agreed to pay [*see, e.g.*, D.E. 105-1, 129, 142].

In letters to the Court, Kelly demands a trial date [D.E. 140] on count 2, a count he describes as addressing "only [PM's] co-fiduciary liability under ERISA." In direct response, PM disagrees:

> Penn Mutual has consistently held the position that payment of disability benefits is a matter between Mr. Kelly and Reliance Standard, which issue has been resolved by virtue of the Court's opinion and order. Penn Mutual has also consistently maintained that should Mr. Kelly be entitled to total disability benefits, that decision would impact other benefits to which Mr. Kelly maybe entitled. Penn Mutual has issued correspondence to Mr. Kelly explaining its position with regard to those benefits and requesting that he make appropriate elections in order to permit the payment of benefits to begin. He has failed to do so.

> Since there does not appear to be any dispute with regard to Mr. Kelly's entitlement to those benefits, and only administrative actions need be taken, we do not believe the scheduling of a trial would be the most appropriate and effective method of disposing of this matter. We therefore request that this Court convene a conference at which time we can discuss the appropriate resolution of the remaining issues either by means of settlement or motion practice.

[D.E. 141.] The foregoing exchange illustrates how the parties have been talking past one another, something the Court sought to avoid in the amended order on summary judgment, where the parties were directed to conduct a settlement conference before the magistrate judge in "an effort to resolve the remaining claims against defendant Penn Mutual," with all trial counsel and clients with full settlement authority required to attend in person. This effort was unsuccessful, as were subsequent efforts to employ mediation before a skilled and respected mediator. Significantly, and guiding the Court's decision now, the amended order aimed to resolve the case in full and to harmonize the summary judgment decision in Kelly's favor as against Reliance with a resolution of his claims against PM.

All along there has been dissonance about the interrelationship between PM and Reliance insofar as Kelly's eligibility for benefits is concerned. Although the amended complaint [D.E. 5] speaks, in part, of breaches of fiduciary duty, both count 1 (per Reliance) and count 2 (per PM) are subtitled "claim for benefits under ERISA." Count 2 claims that PM's misconduct "contributed to the unlawful denial of Plaintiff's claim for disability benefits and Plaintiff was damaged as a result of that denial." (Am. Compl. ¶ 187.) Throughout (and as seen in the letter, D.E. 141, quoted above), PM has indicated that, if Kelly were found to be totally disabled under the Reliance policy, he might be entitled to additional benefits from PM, although those benefits had not been calculated. [*See, e.g.*, D.E. 56, 63.] In the Final Pretrial Order [D.E. 75], PM agreed that "if [Kelly] is entitled to benefits for total disabilities, then [PM] will fulfill its obligations under its contract." Whatever those benefits were, it cannot be controverted that the briefing on all rounds

of motions practice pertaining to the first and second counts of the complaint has focused primarily on count 1, *and* that Kelly's "co-fiduciary" theory regarding PM's liability to him has never been adjudicated.

As shown in the email earlier quoted, Reliance intended to "put the matter to rest" by paying Kelly $400,000 to "satisfy the benefit claim" pending against it. And speaking generally as it does about "the benefit claim," the email is silent about whether Reliance and Kelly were resolving in full his claims of "total disability." PM did not enter into any settlement arrangement. Not surprisingly, then, in opposing Kelly's argument that the email represented the entirety of the agreement, and looking down the road, Reliance writes in its opposition brief that the release it has proposed "includes indemnity language as [Reliance] want[s] finality with respect to its potential obligations under the Plan." [D.E. 127.]

At this point, on the one hand the Court can conclude that Reliance aimed to resolve its liability once and for all in its email to Kelly that is at the heart of his enforcement motion; indeed, the language of its email to Kelly's attorney indicates Reliance planned for the settlement to be not only dispositive ("put the matter to rest . . . satisfy the benefit claim") but that no appeal would (if it could) be taken from this Court's prior rulings or from an anticipated ruling on fees. On the other hand, the Court must conclude that at this stage of the litigation, there is no reason to think that Reliance's payment of $400,000 would necessarily extinguish potential liability given Kelly's and PM's wildly dissimilar views about the nature of those "other benefits to which [Kelly may be] entitled." [D.E. 141.]

There are cases arising in other contexts that hold entry of judgment is to be delayed when it could produce absurd or incongruous results. *See, e.g.*, Wright & Miller, Fed. Practice & Procedure § 2690 (discussing default judgments in context of multiple defendants); *Animal Sci.*

*Prods., Inc. v. China Nat'l Metals & Minerals Imp. & Exp. Corp.*, 596 F. Supp. 2d 842, 849 (D.N.J. 2008) (Brown, J.). The time has come for Kelly to define what he wants from PM, and for Reliance and PM to indicate what Reliance was settling by way of the email and what if anything PM plans to offer Kelly by way of benefits. Filling in those gaps motivated the Court's directions that *all* parties, not just Kelly and PM, pursue negotiations as to PM's obligations. Evidently negotiations and even mediation failed as the vehicle for clarification and resolution. As a consequence, the Court denies Kelly's motion [D.E. 126], and in the absence of any indication the parties can reach agreement, the Court orders motion practice.

Counsel for Kelly, Reliance, and PM shall appear in person and on the record before Magistrate Judge Waldor and draw up a motions briefing schedule directed to the disposition of all open issues in this case. In advance—mindful of the Final Pretrial Order—each of the parties shall file on the docket a submission indicating the parties' theories of what the open issues are and how each might best be addressed by dispositive motion. These respective submissions, which are to be simultaneously filed on Monday, July 28, 2014, may not line up precisely. However, the Court expects that the hearing before Judge Waldor will produce coherent and efficient motion practice. Dates for filing motions that are set forth at the hearing shall be chosen so that they are expeditious—Kelly complains about the length of time that has ensued—and with the understanding that no extensions of time will be granted.

**SO ORDERED this 21st day of July, 2014.**

/s/ Katharine S. Hayden
Katharine S. Hayden, U.S.D.J.